**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

**JESSIE MAE NASH**                                                                                  **PLAINTIFF**

v.                                                   No. 4:16-CV-00053-KGB-PSH

**NANCY A. BERRYHILL,**
Acting Commissioner,
Social Security Administration                                                           **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Jessie Nash applied for social security disability benefits with an alleged disability onset date of January 31, 2012. (R. at 42). After a hearing, the administrative law judge (ALJ) denied her application. (R. at 16). Nash requested Appeals Council review and was denied. (R. at 1). The ALJ's decision thus stands as the Commissioner's final decision, and Nash has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

**I.     The Commissioner's Decision**

The ALJ found that Nash had the severe impairments of degenerative joint disease of the right knee, right thumb arthritis, and obesity. (R. at 12). The ALJ then found that Nash had the residual functional capacity to perform sedentary work except that she could only occasionally stoop, crouch, crawl, or kneel. (R. at 13). Having taken testimony from a vocational expert (VE), the ALJ determined that Nash could return to her past relevant work as a telemarketer. (R. at 16). Accordingly, the ALJ found that Nash was not disabled. (R. at 16).

II.     Summary of Medical Evidence

Nash was born on September 26, 1950. (R. at 42). Her FICA earnings records show a strong work history. (R. at 147). She presented for a consultative examination to Adam Dooley, M.D. on October 20, 2012. (R. at 207–10). Imaging showed an unremarkable lumber spine. (R. at 209). Radiology showed mild CMC arthritis in the right hand and wrist and moderate lateral and anterior compartment degenerative joint disease in the right knee. (R. at 209). Dr. Dooley also diagnosed morbid obesity and lower back pain. (R. at 209). Dr. Dooley opined that Nash could sit, hold a conversation, respond appropriately to questions, and carry out and remember instructions, with limitations of no prolonged standing/walking, no bending/squatting, no lifting/carrying over 20 pounds. (R. at 209). He noted reduced range of motion in the knee and lumbar spine. (R. at 210).

State agency medical consultants examined Nash's medical records and found that she could lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday;

occasionally climb, stoop, kneel, crouch, and crawl; and frequently balance. (R. at 47–48, 58–60).

On April 10, 2013, Nash presented to UAMS for knee and back pain resulting from a fall out of a bathtub and off a collapsing stool. (R. at 215, 217). Nash was in mild distress. (R. at 215). Radiology of the lumbar spine showed subtle anterior vertebral osteophytes at mainly L3–L5, and some sclerotic hypertrophic degenerative changes along the facet joint margins of the lumbar spine. (R. at 219). Radiology of the right knee showed degenerative narrowing of both medial lateral compartments and some narrowing of the patellofemoral joint with mild osteophyte formation mainly along the posterior patella. (R. at 220).

Nash visited William Joseph, M.D. on May 22, 2014 for an initial evaluation. (R. at 241). Dr. Joseph assessed elevated blood pressure without evidence of hypertension, knee pain, generalized abdominal pain, and urinary incontinence. (R. at 241).

She then visited Ethan Shock, M.D. on May 23, 2014, who noted significant patellofemoral arthritis in x-rays. (R. at 249–50, 252). Dr. Shock noted crepitus to range of motion and that Nash had full active extension. (R. at 252). Dr. Shock gave Nash a steroid injection. (R. at 228, 251, 253).

Dr. Joseph saw Nash again on June 5, 2014, when she reported that her knees and back felt better since starting Naprosyn and cyclobenzaprine. (R. at 238). She complained of pain and stiffness in the hands with restricted range of motion in the thumb and requested lab work and x-rays of her thumb. (R. at 238). Examination showed morbid obesity, swelling of the MCP joints of the hands, restricted range of motion of the base of the right thumb, and crepitus with range of motion of the knees. (R. at 238). Lab results tested negative for rheumatoid arthritis factor. (R. at 244).

III.   Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997).  "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Nash argues that the ALJ failed to perform a function by function analysis in compliance with SSR 96-8p, 1996 WL 374184, and that the ALJ's hypotheticals to the ALJ were inadequate because they did not include requirements that Nash had to lie down and prop up her feet or have frequent bathroom breaks.

"We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).  The ALJ in this case considered all of Nash's impairments and the entirety of the medical evidence. (R. at 13–16). The record does not contain any opinion from a medical provider that Nash needs to lie down frequently or prop her feet up. While Nash reported bladder problems, the record is devoid of any diagnosis or treatment for such an issue. Further, Nash testified that she is able to take care of her own cooking and cleaning, and reported attending to her own care, shopping for two hours a week, driving, and performing her own household chores. (R. at 27–28, 167–74). Compounding these considerations is the fact that Nash reported that she quit working because a department of the business she was working for was shut down, not because of her impairments. (R. at 152). Moreover, her first visit with a doctor was for a

consultative examination in October 2012, and the first record of her seeking treatment is from April 2013. (R. at 207–10, 215–21).

At the consultative examination, Nash alleged low back pain, right knee pain, and right thumb pain. (R. at 207). The examiner concluded after examination that Nash could sit, hold a conversation, respond appropriately to questions, and carry out and remember instructions, though she could not stand or walk for prolonged periods, could not bend or squat, and could not lift or carry over twenty pounds. (R. at 209). The examiner noted reduced range of motion in the knee and lumbar spine. (R. at 210). Nash sought treatment in April 2013 after suffering a fall. (R. at 219). An examination revealed no compression deformities or definite subluxation of the lumbar spine and that disk spaces were maintained within normal limits. (R. at 219). In June 2014, she reported that Naprosyn and cyclobenzaprine were helping her back and knee pain. (R. at 238). These records do not support limitations greater than those contained in the RFC.

The ALJ's RFC determination is supported by substantial evidence on the record as a whole. As such, the hypothetical questions which mirror the RFC determination posed to the VE were also sufficient. Nash has not challenged the VE's credibility determination, and the record as a whole supports the ALJ's decision.

## IV.    Recommended Disposition

The ALJ performed a proper function by function analysis and posed sufficient hypothetical questions to the VE. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 14th day of February, 2017.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE